IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SCOTT J. SELIGMAN, <br><br> Plaintiff, <br><br> v. <br><br> STERLING BANCORP, INC., <br><br> Defendant. | Case No. 5:22-cv-12660-JEL-EAS <br><br> Hon. Judith E. Levy <br><br> **Amended Complaint** |

**AMENDED COMPLAINT FOR ENFORCEMENT OF RIGHTS
TO ADVANCEMENT, INDEMNIFICATION, AND REIMBURSEMENT OF LEGAL
EXPENSES**

Plaintiff Scott J. Seligman, by and through his undersigned counsel, brings this action against Defendant, Sterling Bancorp, Inc. ("Sterling Bancorp" or the "Company"), seeking a declaration and enforcement of Mr. Seligman's rights as a former executive officer of the Company and Consulting Director to the Bank. Mr. Seligman seeks advancement, indemnification, and reimbursement of legal expenses, including, without limitation, attorneys' fees and other expenses Mr. Seligman has incurred and will continue to incur in connection with certain litigation and governmental proceedings involving Sterling Bancorp.

**INTRODUCTION**

1.  Sterling Bancorp and its wholly owned subsidiary, Sterling Bank and Trust, F.S.B. (the "Bank" and together with Sterling Bancorp, "Sterling"), have been embroiled in government investigations and shareholder litigation surrounding the Bank's former Advantage Loan Program ("ALP"), which was discontinued in 2019. In October 2022, the Bank paid a $6 million civil

monetary penalty to the U.S. Department of Treasury's Office of the Comptroller of the Currency ("OCC") arising out of its Board's failure to address and remediate unsafe or unsound practices and violations of law reported to the Board in an OCC Report of Examination dated March 31, 2018. The Board subsequently entered a Formal Agreement with the OCC on June 18, 2019, regarding the alleged unsound or unsafe practices and legal violations surrounding the ALP. The payment of this penalty to the OCC followed even larger payments approved by the Board totaling over $13 million to settle litigation against the Board and/or Sterling Bancorp, including a securities fraud suit and a shareholder derivative suit challenging the Board's approval of allegedly false and misleading statements regarding the ALP and its failure to address and remediate the violations the OCC reported to the Board in 2018.

2. To deflect attention away from these settlements and the Board's[1] culpability and dereliction of duty, the Board has embarked on a desperate campaign to shift blame for its oversight and compliance failures to others, including Mr. Seligman, who was a Vice President of Sterling Bancorp until 2019, but has not served on the Board for over 20 years. On October 7, 2022, the Board caused Sterling to file suit against Mr. Seligman, claiming that he and others are to blame for the problems with the ALP, despite the fact that the Board received the OCC's 2018 Report of Examination regarding the ALP, entered the OCC Formal Agreement regarding the violations in 2019, and has settled two shareholder actions involving the ALP. Mr. Seligman vigorously denies the allegations of Sterling's suit, and will fight Sterling's misguided attempt to make him the scapegoat for problems surrounding the ALP. Throughout the period of his service

---

[1] To the extent reference to "the Board" appears interchangeable as to Sterling Bancorp and the Bank, it is because the two entities share the same Board.

2

to Sterling, Mr. Seligman at all times acted in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of Sterling Bancorp and the Bank.

3. To add injury to insult, Sterling Bancorp has rejected Mr. Seligman's demand for advancement, indemnification, and reimbursement of legal expenses to which he is entitled as a former executive officer of Sterling Bancorp under provisions of its Articles of Incorporation and Bylaws, an Agreement for Consulting Services, and applicable Michigan law. While the Board has dished out over $20 million in penalty and settlement payments, and has granted itself millions of dollars in advancement for the Board's own legal expenses, the Board is failing to honor Sterling Bancorp's obligation to fund Mr. Seligman's legal expenses for the clear purpose of starving him into submission.

4. Mr. Seligman brings this action seeking a declaration and enforcement of his rights to advancement, indemnification, and reimbursement of legal expenses. Mr. Seligman is entitled to these rights under provisions of Sterling Bancorp's Articles of Incorporation and Bylaws, an Agreement for Consulting Services, and applicable Michigan law. Mr. Seligman specifically seeks to recover expenses, including attorneys' fees, that he has incurred and will continue to incur in bringing this action and defending against the pending civil suit against him.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Mr. Seligman is a citizen of California and Sterling Bancorp is a citizen of Michigan. The amount in controversy exceeds $75,000.

6. Venue is proper in this district under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the action occurred here. In addition, Sterling Bancorp's Bylaws contain a forum selection clause providing that "the courts of the State of Michigan located in Oakland County and the United States District Court for the Eastern District of Michigan shall be

the sole and exclusive forum for . . . (iii) any action asserting a claim arising pursuant to any provision of the [Michigan Business Corporation] Act, or (iv) any action asserting a claim otherwise governed by the internal affairs doctrine." Amended and Restated Bylaws of Sterling Bancorp, Inc., copy attached hereto as Exhibit A, Article IX. Mr. Seligman asserts claims that arise under the Michigan Business Corporation Act and that are governed by the internal affairs doctrine.

## THE PARTIES

7. Mr. Seligman chartered the Bank, then known as Sterling Savings and Loan Association, in 1984. The Bank is a federally insured depository institution that offers a range of residential and commercial loan products, as well as retail banking services. The Bank is headquartered in Southfield, Michigan, and has nearly 30 branches: 20 in the San Francisco area, six in greater Los Angeles, one in New York City, and its headquarters' branch in Michigan.

8. The Bank is a wholly owned subsidiary of Sterling Bancorp, a unitary thrift holding company headquartered in Southfield, Michigan and incorporated in Michigan in 1989. Sterling Bancorp's primary business is the operation of the Bank. In 2017, Sterling Bancorp conducted an initial public offering of shares of stock issued pursuant to a registration statement on U.S. Securities and Exchange Commission ("SEC") Form S-1 filed with the SEC on October 19, 2017. Sterling Bancorp is an issuer of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934.

9. From approximately 2000 through the end of 2019, Mr. Seligman served as Vice President of Sterling Bancorp. To satisfy Sterling Bancorp's commitment to provide consulting services to the Bank, at Sterling Bancorp's request, Mr. Seligman also provided consulting services to the Bank's board of directors and management, including pursuant to an Agreement for Consulting Services executed on January 19, 1995, a copy of which is attached as Exhibit B.

**PLAINTIFF'S RIGHTS TO ADVANCEMENT, INDEMNIFICATION, AND REIMBURSEMENT OF DEFENSE EXPENSES**

**A. The Litigation and Government Proceedings in Which Mr. Seligman Has Incurred and Continues to Incur Legal Expenses**

10. Mr. Seligman has been named as a defendant in a civil lawsuit brought by Sterling Bancorp and the Bank in this Court, styled *Sterling Bank and Trust, F.S.B., et al. v. Seligman, et al.*, No. 2:22-cv-12398-JEL-EAS (E.D. Mich. Oct. 7, 2022), ECF No. 1, (the "*Sterling* Action"). The complaint in the *Sterling* Action (the "*Sterling* Complaint") alleges claims against Mr. Seligman purportedly arising from services he performed in his capacities as Vice President of Sterling Bancorp and as a Consulting Director of the Bank. A copy of the *Sterling* Complaint is attached hereto as Exhibit C.[2]

11. The Sterling Complaint alleges that Mr. Seligman "exerted near total control over Sterling" and "developed and directed a multibillion dollar loan program"—the ALP—which is at

---

[2] Sterling Bancorp has previously taken the position that "the Court should dismiss [this action] without prejudice and order any amended pleadings be filed as a compulsory counterclaim in [the *Sterling* Action]." Def. Sterling Bancorp, Inc.'s Mot. to Dismiss at 2, No. 22-cv-12398-JEL-EAS (E.D. Mich. Nov. 25, 2022), ECF No. 5. But the law does not require claims for advancement and mandatory indemnification to be brought as compulsory counterclaims. *See, e.g.*, *Kane v. Magna Mixer Co.*, 71 F.3d 555, 562 (6th Cir. 1995); *Int'l Airport Centers, L.L.C. v. Citrin*, 455 F.3d 749, 751 (7th Cir. 2006). Mr. Seligman respectfully submits that the two cases should remain separate to allow for the prompt adjudication of his indemnification and advancement claims so that Mr. Seligman can receive the advancement to which he is entitled under the law to offset the costs and expenses he has already endured in defending against Sterling's baseless lawsuit. Sterling first threatened Mr. Seligman with litigation over a year ago, in November 2021. The briefing on any motion to dismiss in the *Sterling* Action will not conclude until March 24, 2023, and Mr. Seligman cannot assert counterclaims until that motion is resolved. *See* Stip. Order Regarding Service of all Defs. and Response-Related Deadlines, No. 22-cv-12398-JEL-EAS (E.D. Mich. Nov. 11, 2022), ECF No. 7. Given that Mr. Seligman is willing to execute an undertaking in connection with any advancement, the most efficient and appropriate course would be for Defendant to advance the expenses and defer any dispute about indemnification for a later date.

the center of the Sterling Complaint's allegations. Sterling Compl. ¶ 1.[3] The Sterling Complaint describes the ALP as a "flagship" program, *id.* ¶ 2, and "the Bank's most significant product," *id.* ¶ 65.

12.     The Sterling Complaint alleges that Mr. Seligman "exerted control over every aspect of Sterling's operations and business strategies, from the minutiae of everyday life at the Bank's branches to the high-level decisions that controlled the direction the Bank would take." *Id.* ¶ 14.

13.     The Sterling Complaint also alleges Mr. Seligman was able to "exercise power, influence, and control over Sterling's affairs, its employees, and its top-level management." *Id.* ¶ 20; *see also id.* ¶ 21 (alleging that Mr. Seligman "engrained himself in, and wielded control over, all aspects of Sterling's affairs, from its upper-level management to its lower-level employees").

14.     The Sterling Complaint alleges that Mr. Seligman attended Sterling board meetings and "was involved in committees that oversaw the operation of the Bank," *id.* ¶ 21, and further that he "frequently called for, attended, and/or participated in meetings of the Bank's executive management, from monthly residential loan production meetings and mortgage meetings to strategic review meetings and [other] update meetings," *id.* ¶ 23.

15.     The Sterling Complaint alleges that "[f]rom January 2017 to December 2019, Seligman attended dozens, perhaps hundreds, of the Bank's regular management meetings. And he was an active participant in many of these meetings, weighing in on a range of issues both big and small." *Id.* ¶ 25.

---

[3] Restatement of the allegations in the Sterling Complaint herein should not be taken as an admission of the truthfulness of those allegations.

16. The Sterling Complaint further alleges that Mr. Seligman "generally controlled the Bank's management and daily affairs" and "dictated or directed nearly every significant action, and many insignificant actions, at the Bank," *id.* ¶ 26, including "direct[ing] the Bank's spending," "dictat[ing] marketing and advertising efforts," directing loan purchases, and overseeing the Bank's "lease of real estate," *id.* ¶ 27.

17. The Sterling Complaint also alleges that Mr. Seligman "was closely involved in hiring, firing, and other personnel decisions at the Bank and its branches. He directed changes in new hiring and training policies, oversaw hirings and firings, instructed Bank supervisors about what he deemed to be the appropriate roles and responsibilities of their employees, and directed other personnel-related decisions such as department organization and employee compensation." *Id.* ¶ 28.

18. Accordingly, the Sterling Complaint alleges that Mr. Seligman, a former Vice President of Sterling, exerted control over Sterling's flagship Advantage Loan Program and performed numerous additional policy making functions for Sterling Bancorp and the Bank, including with regard to (i) operation of the Bank; (ii) Bank spending; (iii) loan purchases; (iv) personnel-related decisions; and (v) department organization and employee compensation.

19. Beginning in and around November 2021, Sterling threatened to assert the claims that have now been asserted in the *Sterling* Action. Sterling's counsel sent Mr. Seligman's counsel an initial draft of the Sterling Complaint on December 10, 2021. Sterling commenced the *Sterling* Action on October 7, 2022.

20. As a result of his service as a Vice President of Sterling Bancorp and as a Consulting Director of the Bank, Mr. Seligman has also incurred expenses in connection with certain governmental investigations involving Sterling Bancorp and the Bank, including investigations by

7

the U.S. Department of Justice and the OCC related to the ALP (the "Government Proceedings"). Plaintiff began incurring expenses in connection with the Government Proceedings no later than July 2020, and Plaintiff has continued to incur expenses in connection with the Government Proceedings to this day.

21. Mr. Seligman has incurred and continues to incur significant legal expenses in connection with the *Sterling* Action and the Government Proceedings.

**B.   Sterling Bancorp's Obligations to Advance, Indemnify, and Reimburse Mr. Seligman's Legal Expenses Under Its Articles of Incorporation and Bylaws**

22. Article IX of Sterling Bancorp's Second Amended and Restated Articles of Incorporation (the "Articles of Incorporation"), filed with the Michigan Corporations Division on November 15, 2017, provides broad mandatory indemnification rights, stating, in pertinent part, that:

> Directors and executive officers of the Corporation ***shall be indemnified as of right*** to the fullest extent now or hereafter permitted by law ***in connection with any actual or threatened civil, criminal, administrative, or investigative action, suit or proceeding (whether brought in the name of the Corporation, a subsidiary or otherwise) in which a director or executive officer is a witness or which is brought against a director or executive officer in his or her capacity as a director, officer, employee, agent, or fiduciary of the Corporation*** . . . . The provisions of this Article IX shall be applicable to actions, suits or proceedings arising from acts or omissions occurring before or after the filing of these Second Amended and Restated Articles of Incorporation with the Corporation Division, and to directors, executive officers, and other persons who have ceased to render such service . . . .

Articles of Incorporation, copy attached hereto as Exhibit D, Article IX (emphasis added).

23. Article VIII of Sterling Bancorp's Amended and Restated Bylaws (the "Bylaws") provides similarly broad mandatory indemnification rights, stating, in pertinent part, that:

> Directors and executive officers of the Corporation ***shall be indemnified as of right*** to the fullest extent now or hereafter

8

> permitted by law *in connection with any actual or threatened civil, criminal, administrative, or investigative action, suit or proceeding (whether brought in the name of the Corporation, a subsidiary or otherwise) in which a director or executive officer is a witness or which is brought against a director or executive officer in his or her capacity as a director, officer, employee, agent, or fiduciary of the Corporation or of any corporation, partnership, . . . or other enterprise which the director or executive officer was serving at the request of the Corporation. Persons who are not directors or executive officers of the Corporation may be similarly indemnified in respect of such service to the extent authorized at any time by the Board of Directors of the Corporation.* The provisions of this Article VIII shall be applicable to actions, suits or proceedings arising from acts or omissions occurring before or after adoption of these bylaws, and to directors, executive officers, and other persons who have ceased to render such service . . . .

Bylaws, copy attached hereto as Exhibit A, Article VIII (emphasis added).

24. Neither the Articles of Incorporation nor the Bylaws define "executive officer."

25. In light of Mr. Seligman's title as Vice President of Sterling Bancorp and his alleged functions in that role, *see supra* ¶¶ 11–18, including regular attendance at Sterling's board meetings, Sterling Compl. ¶ 22, and "participat[ion] in meetings of the Bank's executive management," *id.* ¶ 23, Mr. Seligman was at all times relevant to this complaint serving as an executive officer of Sterling Bancorp.

26. As a result of his position, title, and/or functions at Sterling Bancorp, Mr. Seligman was at all times relevant to this complaint covered by the mandatory indemnity provisions of the Articles of Incorporation and Bylaws.

27. Michigan's Business Corporation Act, which applies to Michigan corporations like Sterling Bancorp, authorizes such companies to indemnify directors, ***officers***, employees, and agents against expenses, including attorneys' fees and amounts paid in settlement, and, for claims brought by third parties, judgments, penalties, and fines to which the indemnified person may become subject. *See, e.g.,* Mich. Comp. Laws §§ 450.1561–62. Michigan law also permits a

9

corporation to pay the reasonable expenses incurred by a director, *officer*, employee, or agent in advance of the final disposition of the proceeding. *See id.* § 450.1564b(1).

28. Further, Michigan law provides that "[a] provision in the articles of incorporation or bylaws . . . making indemnification mandatory shall also make the advancement of expenses mandatory unless the provision, resolution, or agreement specifically provides otherwise." *Id.* § 450.1564b(4).

29. The mandatory indemnification provisions set forth in Sterling Bancorp's Articles of Incorporation and Bylaws do not address advancement and therefore do not provide that advancement is other than mandatory. Thus, under section 450.1564b(4), advancement of Mr. Seligman's legal expenses under Sterling Bancorp's Articles of Incorporation and Bylaws is mandatory.

### C. Sterling Bancorp's Obligations to Advance, Indemnify, and Reimburse Mr. Seligman's Legal Expenses Under an Agreement for Consulting Services

30. In 1995, Sterling Bancorp and the Bank entered into an Agreement for Consulting Services (the "Consulting Agreement"), wherein Sterling agreed to "make the services of its officer, Mr. Seligman, available to the Bank for consulting purposes." Consulting Agreement, Exhibit B ¶ 1.

31. In signing the Consulting Agreement, Sterling's Board authorized Mr. Seligman, as an officer of Sterling Bancorp and a Consulting Director to the Bank, to be indemnified "against all liability and expenses actually and reasonably incurred in connection with the performance of his duties as a consultant to the Bank." *Id.* ¶ 6. The language in the indemnification clause of the Consulting Agreement is broad and unequivocal. It states:

> The Bank **shall indemnify Mr. Seligman** against all liability and expenses actually and reasonably incurred in connection with the performance of his duties as a consultant to the Bank **to the maximum extent permitted by applicable laws and regulations**.

10

> Mr. Seligman is intended to be a third-party beneficiary of this paragraph.

*Id.* (emphasis added).[4]

32. The Sterling Complaint alleges that Mr. Seligman "leveraged his positions as founder, **Consulting Director to the Bank**, and Vice President and controlling shareholder of [Sterling] to exercise power, influence, and control over Sterling's affairs, its employees, and its top-level management." Sterling Compl. ¶ 20 (emphasis added). The Sterling Complaint further alleges that, while serving as Consulting Director to the Bank, Mr. Seligman, "attended dozens, perhaps hundreds, of the Bank's regular management meetings" and that "he was an active participant in many of these meetings, weighing in on a range of issues both big and small." *Id.* ¶ 25.

33. Because the allegations in the Sterling Complaint arise out of Mr. Seligman's performance of his duties as a Consulting Director to the Bank, Mr. Seligman is entitled to indemnification under the 1995 Consulting Agreement.

34. Because the indemnification provision in the Consulting Agreement uses the word "shall," it is mandatory. Consulting Agreement, Exhibit B ¶ 6.

35. Michigan's Business Corporation Act provides that "[a] corporation may pay or reimburse the reasonable expenses incurred by a director, officer, employee, or agent of the corporation, or **by a person that is or was serving at the request of the corporation as a director**,

---

[4] In 2010, the Parties may have entered into another Consulting Agreement (the "2010 Consulting Agreement"), which "formalized Seligman's role as Consulting Director." Sterling Compl. ¶ 17. Mr. Seligman has been unable to locate a copy of that agreement due to Sterling's unwillingness to allow Mr. Seligman access to his rightfully-owned documents in its possession. On information and belief, the 2010 Consulting Agreement did not alter the terms of the indemnification provision in the 1995 Consulting Agreement.

officer, partner, trustee, employee, or agent *of another foreign or domestic corporation, partnership, joint venture, trust, or other profit or nonprofit enterprise*." Mich. Comp. Laws § 450.1564b(1) (emphasis added). The statute further provides that "[a] provision in the articles of incorporation or bylaws, a resolution of the board or shareholders, or *an agreement making indemnification mandatory shall also make the advancement of expenses mandatory unless the provision, resolution, or agreement specifically states otherwise*." *Id.* § 450.1564b(4) (emphasis added).

36. The mandatory indemnification provision in the Consulting Agreement does not address advancement and therefore does not provide that advancement is other than mandatory.

37. Because Mr. Seligman was at all times relevant to this complaint serving as an executive officer of Sterling Bancorp, and—at the request of Sterling Bancorp's Board—was also serving as a Consulting *Director* to the Bank, Mr. Seligman is entitled to indemnification and advancement under the relevant provisions of the Articles of Incorporation, the Bylaws, the Consulting Agreement, and Michigan law.

### D. Sterling Bancorp's Refusal to Advance and Reimburse Mr. Seligman's Legal Expenses

38. Through his counsel, Mr. Seligman has requested that Sterling Bancorp fulfill its obligations to advance and reimburse Mr. Seligman's legal expenses in connection with the *Sterling* Action and the Government Proceedings, and has offered to execute and provide Sterling Bancorp with a written undertaking pledging to repay any amounts it advanced or otherwise paid on Mr. Seligman's behalf if it is ultimately determined that Mr. Seligman is not entitled to indemnification.

39. Sterling Bancorp has rebuffed those requests and refuses to honor its obligations to advance, indemnify, and reimburse Mr. Seligman's legal expenses in connection with the *Sterling* Action and the Government Proceedings.

40. Mr. Seligman has incurred and will continue to incur substantial expenses in connection with the *Sterling* Action and the Government Proceedings.

## COUNT I
## ADVANCEMENT AND REIMBURSEMENT OF EXPENSES

41. Mr. Seligman incorporates by reference each and every allegation contained above as though fully set forth herein.

42. Pursuant to Article IX of Sterling Bancorp's Articles of Incorporation, Article VIII of Sterling Bancorp's Bylaws, ¶ 6 of the 1995 Consulting Agreement, and Michigan law, Mr. Seligman is entitled to advancement and reimbursement of all attorneys' fees and other expenses incurred in connection with the *Sterling* Action and the Government Proceedings.

43. Under applicable law, Mr. Seligman is also entitled to payment of interest on that amount.

44. Mr. Seligman has been injured and will continue to be injured by Sterling Bancorp's refusal to honor its obligations to advance and reimburse Mr. Seligman's expenses if relief is not granted, as a result of the substantial expenses he has incurred and will continue to incur in connection with the *Sterling* Action and the Government Proceedings.

45. Mr. Seligman is entitled to entry of an order enforcing his rights to advancement and reimbursement by:

   a. Compelling Sterling Bancorp to advance Mr. Seligman's unreimbursed fees and expenses already incurred in connection with the *Sterling* Action and the Government Proceedings;

      b.      compelling Sterling Bancorp to pay interest on that amount; and

      c.      requiring Sterling Bancorp to advance Mr. Seligman's fees and expenses going forward in connection with the *Sterling* Action and the Government Proceedings.

## COUNT II
## INDEMNIFICATION

46.    Mr. Seligman incorporates by reference each and every allegation contained above as though fully set forth herein.

47.    Pursuant to Article IX of Sterling Bancorp's Articles of Incorporation, Article VIII of Sterling Bancorp's Bylaws, ¶ 6 of the 1995 Consulting Agreement, and Michigan law, Mr. Seligman is entitled to indemnification for all liability and expenses actually and reasonably incurred in connection with the performance of his duties as Vice President of Sterling Bancorp and a Consulting Director to the Bank.

48.    Mr. Seligman has already incurred expenses in connection with the *Sterling* Action and the Government Proceedings for his role as an executive officer of Sterling Bancorp and a Consulting Director to the Bank. And any future litigation expenses incurred in connection with these proceedings will also arise out of the performance of his duties in those roles.

## COUNT III
## DECLARATORY JUDGMENT

49.    Mr. Seligman incorporates by reference each and every allegation contained above as though fully set forth herein.

50.    Mr. Seligman will continue in the future to incur expenses in connection with the *Sterling* Action and the Government Proceedings. All of these expenses will be incurred in connection with proceedings in which Mr. Seligman has become involved by virtue of his prior service as Vice President of Sterling Bancorp and as a Consulting Director to the Bank. There is

an actual controversy between the parties concerning Mr. Seligman's rights to advancement and indemnification in these proceedings.

51. Pursuant to Michigan Court Rule 2.605, Mr. Seligman seeks a judgment from this Court declaring that Sterling Bancorp is obligated to advance Mr. Seligman's expenses incurred in connection with the *Sterling* Action and the Government Proceedings.

## COUNT IV
## INDEMNIFICATION AND REIMBURSEMENT OF COSTS AND EXPENSES INCURRED IN THIS ACTION

52. Mr. Seligman incorporates by reference each and every allegation contained above as though fully set forth herein.

53. Under applicable law, Mr. Seligman is entitled to an award of his reasonable expenses, including attorneys' fees, incurred in successfully bringing and litigating this action to secure his rights to advancement, indemnification, and reimbursement of legal expenses.

WHEREFORE, Mr. Seligman respectfully requests that this Court:

    a.    enter judgment in Mr. Seligman's favor on this Amended Complaint;

    b.    declare that Sterling Bancorp is required to advance, in a timely manner, the expenses incurred, and that will be incurred, by Mr. Seligman in the *Sterling* Action and the Government Proceedings;

    c.    order Sterling Bancorp to pay the expenses incurred by Plaintiff in connection with the *Sterling* Action, the Government Proceedings, and this lawsuit, and to continue advancing such expenses as they are incurred in those matters;

    d.    order Sterling Bancorp to pay pre-judgment and post-judgment interest on the foregoing amounts; and

    e.    grant such other and further relief as is warranted under the circumstances.

DATED: December 16, 2022  Respectfully submitted,

/s/ *Jeffrey B. Morganroth*
Jeffrey B. Morganroth (P41670)
Morganroth & Morganroth, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009-5310
(248) 864-4000
jmorganroth@morganrothlaw.com

/s/ *Chantale Fiebig*
Chantale Fiebig
Mark A. Perry (admission application forthcoming)
Crystal L. Weeks (admission application forthcoming)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
chantale.fiebig@weil.com
mark.perry@weil.com
crystal.weeks@weil.com

/s/ *Michael R. Smith*
Michael R. Smith
Benjamin Lee
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
404-572-4600
mrsmith@kslaw.com
blee@kslaw.com

*Counsel for Plaintiff Scott J. Seligman*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SCOTT J. SELIGMAN,<br><br>Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.,<br><br>Defendant. | Case No. 5:22-cv-12660-JEL-EAS<br><br>Hon. Judith E. Levy |

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December, 2022, I caused a copy of the foregoing Amended Complaint to be electronically filed with the U.S. District Court for the Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

DATED: December 16, 2022

Respectfully submitted,

/s/ Chantale Fiebig
Chantale Fiebig
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
chantale.fiebig@weil.com

*Counsel for Plaintiff Scott J. Seligman*

17